# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHRISTIAN BELL,

        Petitioner,                  Case Number: 2:16-11505
                                        HONORABLE SEAN F. COX

v.

STEVEN RIVARD,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Christian Bell, through counsel, seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner is a state prisoner in the custody of the Michigan Department of Corrections pursuant to convictions for second-degree murder and possession of a firearm during the commission of a felony. He raises two claims for habeas relief. Respondent argues that the claims are meritless. The Court denies the petition.

## I. Background

Petitioner's convictions arise from the shooting death of Nathaniel Webb. The Michigan Court of Appeals provided this overview of the trial testimony:

> Early on a February morning, defendant's 18-year-old sister, Chesica Bell, collapsed and died in the bathroom of her home. Eventually, an autopsy revealed that Chesica had an enlarged heart and abnormal coronary vasculature, and had suffered an acute heart attack. Before the pathologist could explain Chesica's tragic and unexpected death, defendant concluded that Chesica's boyfriend, Nathaniel Webb, had killed his sister. Hours after Chesica's death, defendant texted his father: "daddy, my sista is really gone

because of him. I'm gonna kill him."

That same day, mourners including Webb and defendant gathered at Chesica's family home. Defendant's mother described defendant as "devastated" over Chesica's death, the cause of which would remain unknown to the family for a few more days. Defendant obtained a handgun from inside the home and confronted Webb. In his trial testimony, defendant described the events preceding the shooting as follows:

> I walked outside, I seen [sic] Nate and I said can I talk to you. He was getting into his car; I ran up to his car; put my door [sic] in his-between his door before he closed it and I asked him can I talk to you. He wanted me to move my arm and I just kept asking him can you please talk to me; and then I got emotional, I start crying. I said can you at least come in the house and talk to my mama. He just-he said [f* * *] you and your mama.

Defendant admitted that he "just lost it," his "emotion[s] took over," and he started shooting. He explained, "I wasn't thinking. My head wasn't straight, I just blanked out."

After firing three times, defendant disposed of the gun in a dumpster, threw his cell phone on the ground, and fled to Kentucky. Webb died at a nearby hospital. While defendant remained on the lam, the police obtained a warrant to search defendant's cell phone history and text messages. The police eventually apprehended defendant and he stood trial in the Wayne Circuit Court. He now appeals his second-degree murder conviction and his sentence.

*People v. Bell*, No. 315196, 2014 WL 3887196, *1 (Mich. Ct. App. Aug. 7, 2014).

Petitioner was convicted by a jury in Wayne County Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On January 16, 2013, he was sentenced to 18 to forty years for the second-degree murder conviction, and 2 years for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals arguing that the

prosecutor improperly exercised two peremptory challenges to exclude two African-American members from the jury pool, the police search of Petitioner's phone violated the Fourth Amendment, the trial court improperly denied request for manslaughter jury instruction, and offense variables 3, 6, and 19 were improperly scored. The Michigan Court of Appeals denied Petitioner's claims with the exception of the *Batson* claim. *Bell*, No. 315196, 2014 WL 3887196, at *12-*13. The court of appeals held that the trial court failed to properly evaluate Petitioner's objection to the prosecutor's peremptory challenges during jury selection and remanded to the trial court to conduct a hearing pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). *Id.* at *8-*9, *12-*13. The State appealed the Michigan Court of Appeals' decision remanding the case, but the Michigan Supreme Court denied the State's application for leave to appeal. *People v. Bell*, 497 Mich. 856 (Mich. Sept. 5, 2014).

On remand and after holding a hearing and taking testimony from the prosecutor, the trial court held that the peremptory challenges had not been motivated by purposeful racial discrimination. *See* 12/12/2014 Tr. at 68-74. The Michigan Court of Appeals affirmed the trial court's denial of the *Batson* claim, *People v. Bell*, No. 315196, 2015 WL 1314122 (Mich. Ct. App. March 24, 2015), and denied Petitioner's motion for reconsideration. *People v. Bell*, No. 315196 (Mich. Ct. App. May 6, 2015). The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Bell*, 498 Mich. 907 (Mich. Oct. 28, 2015).

Petitioner then filed this habeas corpus petition. He raises these claims:

    I.    The prosecutor's exercise of peremptory challenges to exclude two

3

>    African-American members from a jury pool that was severely underrepresented with African American jurors violated [Bell's] constitution[al] right to equal protection of the law.
>
> II. The trial court improperly denied [Bell's] requested jury instruction on manslaughter, which deprived him of his constitutional rights to a properly instructed jury and to present a defense, because it negated his sworn testimony and theory of the case regarding the only disputed issue at trial: his intent.

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts

5

with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. Discussion

### A. *Batson* Claim

Petitioner argues that the prosecution violated his right to equal protection during jury selection by using peremptory challenges to excuse two African-American members of the jury pool.

The Equal Protection Clause of the Fourteenth Amendment commands that "no State shall ... deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. This Clause prohibits a prosecutor from using a peremptory

6

challenge to exclude members of the jury venire because of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme Court articulated a three-step process for evaluating claims when a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. *Id.* at 96-98. First, the court must determine whether the defendant made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.* at 96-97. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror. *Id.* at 97-98. "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006), quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Third, if a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98.

The Michigan Court of Appeals affirmed the trial court's denial of the *Batson* challenge, stating:

> At the *Batson* hearing, the parties devoted most of their efforts to reconstructing the racial composition of the jury at the time of the two contested strikes. Our original opinion had directed this exercise, although we also posited that the parties could instead omit this step and proceed directly to testimony eliciting the prosecutor's justifications for the strikes. After reaching an agreement as to the race of the jurors in the venire at the time of the strikes, the trial court ruled that Bell had failed to establish a prima facie case of racial discrimination. We have our doubts about the correctness of that ruling, but our concerns are of no consequence. Despite having rejected that defendant established an inference of discrimination, the trial court explored through sworn testimony the prosecutor's justifications for the strikes, and

rendered a determination that they were not infected with racial bias. Having engaged the prosecutor and defense counsel on the merits of *Batson* steps two and three, whether defendant made a sufficient *prima facie* showing of discrimination no longer mattered. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359.

The prosecutor offered the following reasons for the contested strikes of jurors Ethel Thomas and Gary Fizer:

> As it relates to Ms. Thomas, she indicated that her brother had been murdered in the City of Detroit. I think it was two years prior to her coming into court.
>
> That she had met with Homicide Detectives from the Detroit Police Department's Homicide Division. And that even after an investigation, there was [sic] no suspects that had been developed.
>
> Because of that, I excused her.
>
> As it relates to Mr. Fizer, Mr. Fizer had indicated that – he indicated a lot of things.
>
> First he indicated that he was friends with a judge in Inkster. That led me to believe that at the time there was an ongoing situation with the current sitting Inkster judge.
>
> But he – the thing that was most troubling to me, he also indicated that he had some children that had been investigated in the City of Detroit for criminal activity.
>
> But the reason why I kicked him was because he had indicated that he couldn't even look at the defendant, because he reminded him of his grandson.
>
> And so that's why I excused him.

Defense counsel challenged these reasons. As to Ms. Thomas, counsel argued

8

that a Caucasian juror, Jenny Yates, revealed that "her father had been shot in the line of duty," and Ms. Yates's grandmother "had been killed with a gun during domestic violence." No one was prosecuted for Ms. Yates's father's murder. Employing a comparative juror analysis, counsel asserted that the reasons given for the strikes were unconvincing. Counsel disputed that Mr. Fizer had actually expressed that "he would not even look at the defendant," and emphasized that Mr. Fizer had reassured the court that "he could convict with a clear conscience" if he felt that the prosecution had proved its case.

The trial court found that juror Yates's father's shooting occurred 17 years previously, "when she was a small child," and that Ms. Yates had "indicated that it would not impact her." In contrast, the court recollected, Ms. Thomas's brother was killed only two years earlier, the case remained unsolved, and Ms. Thomas had personal contact with the Homicide Unit. The trial court deemed the prosecutor's explanation for excusing Ms. Thomas "valid" because the Homicide Department's failure to find Ms. Thomas's brother's killer "was fresh in her mind," which distinguished her from Ms. Yates.

Quoting directly from the transcript of the prior trial, the court confirmed that Mr. Fizer had indeed attested that "defendant reminded him of his grandson," and that he had expressed "I really don't want to look at him" for that reason. These statements, the court ruled, also constituted "valid" reasons for a peremptory challenge.

We presume that by using the term "valid," the trial court meant that the prosecutor's explanations for the challenges were credible, and that the prosecutor had exercised the challenges in a nondiscriminatory manner. Given the "great deference" owed to trial courts' *Batson* findings and that the court followed our directive by engaging in the constitutionally required analysis, we affirm the denial of Bell's *Batson* claim.

*Bell,* 2015 WL 1314122, at *2-*3.

"[A] trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled to great deference." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (citations omitted). On direct appeal, a credibility determination may be reversed "only if the trial judge is shown to have committed clear error." *Id.* (citing *Rice v.*

*Collins*, 546 U.S. 333, 338 (2006)). The standard is even stricter under AEDPA. A state court's determination of the absence of discriminatory intent is "'a pure issue of fact' accorded significant deference." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) (quoting *Hernandez v. New York*, 500 U.S. 352, 367 (1991)). On habeas review, findings of fact made by the state court are presumptively correct and must be rebutted by the petitioner by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted the finding by the trial court finding the prosecutor's race-neutral explanations credible. Therefore, this Court must defer to the state court's ruling on the issue of purposeful discrimination, and to the state appellate court's conclusion that no *Batson* error occurred. Habeas relief is not warranted on this claim.

### B. Jury Instruction Claim

Petitioner's second claim for relief concerns the trial court's denial of a requested voluntary manslaughter jury instruction. He argues that the trial court's ruling deprived him of his right to a properly instructed jury and his right to present a defense.

The Michigan Court of Appeals held that the evidence did not support a manslaughter jury instruction:

> A voluntary manslaughter instruction was not supported by a rational view of the evidence in this case. In order to prove voluntary manslaughter, "one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich. at 535. Provocation is a circumstance that negates the presence of malice, by causing a reasonable person to lose control. *Id.*; *People v. Pouncey*, 437 Mich. 382, 389; 471 NW2d 346 (1991). The provocation must cause a reasonable person to act out of passion rather than reason, and the determination of what is

10

> reasonable provocation is a question of fact for the fact finder. *Pouncey*, 437 Mich. at 390.
>
> ***
>
> Defendant was likely distraught due to his sister's death earlier in the day, and, as he claims, defendant may have "just lost it" and "blanked out." It is also possible that Webb uttered profanities directed toward defendant and his mother just before the shooting. However, the evidence suggests that defendant was not acting in the heat of passion upon adequate provocation. Defendant interacted with Webb throughout the day as the family gathered to mourn the loss of his sister. During that time, defendant questioned Webb concerning the events surrounding his sister's death and suspected that Webb somehow played a role. Approximately 40 minutes before the shooting, defendant left the home and went to the store, where he sent a text message to his father that stated, "daddy, my sista is really gone because of him. I'm gonna kill him." Defendant then went back to the house, and consciously obtained a handgun from his mother's upstairs closet before he went outside to talk with Webb and Webb's brother. While defendant did not fire until Webb used a profane expression, defendant had armed himself before deliberately initiating a hostile confrontation. Furthermore, although words may sometimes suffice to supply adequate provocation, more than "mere insults" are usually required. *Pouncey*, 437 Mich. at 391. Under these circumstances, the trial court did not abuse its discretion in declining to read the voluntary manslaughter instruction.

*Bell*, 2014 WL 3887196 at *10-11.

"'To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.'" *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir. 2008) (quoting *Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir. 1997)). Where a claim of error involves failure to give an instruction, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

11

The Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case. *See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (holding that a trial court is required to instruct on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant). But "the Constitution does not requires a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). Even where a lesser offense instruction is requested, the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc). Because there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1), habeas relief is denied on this claim.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied

when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that neither of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## V. Conclusion

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED**.

Dated: May 9, 2019	s/ Sean F. Cox
	Sean F. Cox
	U. S. District Judge